# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Michael Landry, Petitioner,

v.

Angela Landry, Respondent.

Appellate Case No. 2019-000843

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Greenville County
Rochelle Y. Conits, Family Court Judge

---

Opinion No. 27968
Heard February 11, 2020 – Filed May 13, 2020

---

## REVERSED AND REMANDED

---

Rhett D. Burney, of Rhett Burney, PC, of Simpsonville,
and J. Falkner Wilkes, of Greenville, for Petitioner.

Larry Keith Wood, of Larry K. Wood, P.A., of Mauldin,
for Respondent.

---

**JUSTICE HEARN:** We granted Michael Landry's petition for a writ of certiorari to determine whether the court of appeals erred in affirming the family court's denial of his motion under Rule 60(a), SCRCP, to correct an alleged clerical error in a final

order. We reverse the decision of the court of appeals and remand to the family court for a new hearing.

## FACTUAL/PROCEDURAL BACKGROUND

Michael Landry (Husband) filed an action against Angela Landry (Wife) seeking a divorce on the ground of one year's continuous separation. The parties were scheduled for a contested hearing before the family court on December 6, 2016. On the morning of trial, the parties drafted and signed a handwritten agreement resolving all of the issues between them except for the divorce. Thereafter, the parties informed the court they had reached a final agreement, marked the agreement as Plaintiff's Exhibit 1, and submitted it to the court for approval. The agreement, which consisted of three pages and seventeen paragraphs, determined the issues of alimony, equitable distribution of property, child support, custody and visitation of the minor child, and attorney's fees. The terms of the agreement were not read into the record; instead, the court questioned both parties about their general understanding of the agreement and whether they entered into it freely and voluntarily. Satisfied with the parties' responses, the court stated it would approve the agreement and make it the final order of the court.

As requested by the family court, Husband's attorney drafted the order, incorporating the handwritten agreement by typing its terms into the final order. After sending it to opposing counsel for his approval, Husband submitted the order to the family court judge, who signed it on January 18, 2017. Nine weeks later, Husband noticed the order contained a provision requiring him to pay Wife one-half of his military retirement benefits—the focal point of this appeal. Specifically, paragraph 2 of the final order, which was not part of the parties' handwritten agreement, stated: "Husband shall pay wife one-half of his Airforce retirement[.] The Defendant will as soon as possible make application for her portion of the benefits to be paid directly to her relieving him of any obligation to continue to pay her portion out of his funds." However, the handwritten agreement did mention Husband's military retirement in paragraph 6, which stated: "The husband's alimony payments, child support payments, and ½ of military retirement for December 2016 shall be paid by husband to wife once the TSP[1] is divided by QDRO. The amount is

---

[1] The Thrift Savings Plan (TSP) is a retirement savings and investment plan for Federal employees and members of the uniformed services. Established by Congress in the Federal Employees' Retirement System Act of 1986, the TSP is a defined contribution plan that provides the participant with retirement income based on how

$2,923.00." Nevertheless, believing the addition of paragraph 2 to be a mistake—albeit one made by his own attorney in drafting the order—Husband moved for relief under Rule 60(a), SCRCP, based upon a clerical mistake "arising from oversight or omission."

The court held a hearing on the motion. Noticing that a provision in the handwritten agreement referenced Husband's military retirement benefits, the court questioned Husband's counsel as follows: "Well, wait a minute, Paragraph 6 says, 'The husband's alimony payments, child support payments, and one half of the military retirement.' It says that doesn't it?" Husband's counsel answered affirmatively. Regarding paragraph 2 at issue, the court asked Husband's counsel, "Well, why in the world would you add that if, y'all drafted it, why did y'all add that if it wasn't your agreement?" Husband's counsel replied, "I don't know why we put that in there. All I can tell you, I know why we put the agreement in writing. That was so there would not be any misunderstanding. Both parties signed that. We presented that to the court. The only reason we typed it from that point on was because it looked neater." Wife's counsel opposed the motion, arguing the parties did in fact agree to share Husband's military retirement benefits.

Thereafter, the court denied the motion, finding Husband should have requested relief pursuant to Rule 59(e), SCRCP, rather than through Rule 60(a), SCRCP, and accordingly, the court lacked jurisdiction to consider the merits of the motion. Alternatively, the court found the parties had agreed that one-half of Husband's military retirement benefits would be paid to Wife. Husband appealed to the court of appeals, which affirmed the family court's decision in an unpublished per curiam opinion pursuant to Rule 220(b), SCACR. Husband petitioned for a writ of certiorari, which this Court granted.

## ISSUE PRESENTED

Did the court of appeals err in affirming the family court's order denying Husband's motion under Rule 60(a), SCRCP, to correct the final order by removing

---

much is paid into the account during employment and earnings accumulated over time. *What is the Thrift Savings Plan (TSP)?*, THRIFT SAVINGS PLAN, https://www.tsp.gov/PlanParticipation/AboutTheTSP/index.html (last visited Feb. 5, 2020).

a provision that was allegedly included by mistake and to which the parties purportedly did not agree?

## STANDARD OF REVIEW

On appeal, this Court reviews the family court's legal and factual issues de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018). Therefore, in appeals taken from the family court, the appellate court may find facts in accordance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 384, 709 S.E.2d 650, 652 (2011). However, a family court's evidentiary or procedural rulings will not be reversed on appeal absent an abuse of discretion. *Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2. In reviewing decisions to grant or deny motions under Rule 60, SCRCP, the abuse of discretion standard applies. *See Ex Parte Carter*, 422 S.C. 623, 631, 813 S.E.2d 686, 690 (2018). An abuse of discretion occurs when the ruling is controlled by an error of law, or when based on factual conclusions, is without evidentiary support. *McKinney v. Pedery*, 413 S.C. 475, 482, 776 S.E.2d 566, 570 (2015).

## DISCUSSION

Husband contends both the family court and the court of appeals erred in rejecting Rule 60(a) as a vehicle for correcting the order to conform it to the parties' original intent. Conversely, Wife asserts Rule 60(a) is inapplicable because Husband seeks to change the scope of the judgment and he forfeited his ability to challenge the order by failing to file a Rule 59(e) motion. We disagree that Rule 59(e) afforded the only avenue of relief. However, because the agreement is ambiguous as to whether the parties actually intended to permanently divide Husband's military retirement benefits, and that fact was never clarified during the court's initial approval of the agreement, we decline to adopt Husband's position at this posture and instead remand to the family court for that determination.[2]

---

[2] Husband also argues the court of appeals erred in applying *Brown v. Brown*, 392 S.C. 615, 709 S.E.2d 679 (Ct. App. 2011), to the facts of this case. However, because our analysis of the family court's decision is dispositive, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (finding an appellate court need not address remaining issues on appeal when decision of a prior issue is dispositive).

We begin by addressing whether the family court erred in finding that it lacked jurisdiction to consider the substance of Husband's motion because he was procedurally required to seek relief under Rule 59(e) rather than Rule 60.  It is well-established that a Rule 59(e) motion to alter or amend a judgment must be served within ten days from receiving notice of entry of the order. Rule 59(e), SCRCP; *Overland, Inc. v. Nance*, 423 S.C. 253, 256-57, 815 S.E.2d 431, 433 (2018).  In contrast, Rule 60 applies to specific contexts and does not impose a ten-day jurisdictional requirement.  Particularly relevant is Rule 60(a), SCRCP, which enables the court on its own initiative or on a party's motion to correct clerical mistakes "arising from oversight or omission."  However, not all mistakes may be corrected under this Rule, as the United States Court of Appeals for the Fourth Circuit has explained:

> The basic distinction between clerical mistakes and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of blunders in execution whereas the latter consist of instances where the court *changes its mind*, either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination.

*Sartin v. McNair Law Firm*, 756 F.3d 259, 265 (4th Cir. 2014) (quoting *Rhodes v. Hartford Fire Ins. Co.*, 548 Fed.Appx. 857, 859-60 (4th Cir. 2013) (per curiam)).  Instead, for Rule 60(a) to apply, the "mistake" must be one where "there is an inconsistency between the text of an order or judgment and the . . . court's intent when it entered the order or judgment," which "includes an unintended ambiguity that obfuscates the court's original intent." *Id*. at 265-66.

While the family court has authority to modify certain orders, including those involving a child or ongoing child support and alimony payments upon a showing of changed circumstances, it may not modify an order pertaining to equitable property division. *See Miles v. Miles*, 393 S.C. 111, 120, 711 S.E.2d 880, 885 (2011) (holding spousal support may be modified where requesting party demonstrates a substantial change in circumstances); *Moesley v. Moesley*, 263 S.C. 1, 4, 207 S.E.2d 403, 404 (1974) (holding divorce decree may be modified with respect to custody and child support); S.C. Code Ann. § 20-3-620(C) (2014) ("The [family] court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal.").  Further, it is "exceedingly clear that the family court *does not* have the authority to modify court

ordered property divisions." *Simpson v. Simpson*, 404 S.C. 563, 571, 746 S.E.2d 54, 58-59 (Ct. App. 2013).  The only exception to this general rule is when Rule 60 is implicated.

Specifically, Rule 60(a) provides a mechanism to modify an order that may be non-modifiable under these general principles. *Thompson v. Thompson*, 428 S.C. 142, 149, 833 S.E.2d 274, 278 (Ct. App. 2019) ("[T]he family court has jurisdiction to reconsider an otherwise un-modifiable property division in order to correct clerical errors and in exceptional circumstances.").  For example, the court allowed modification of property division under Rule 60(a) to correct a clerical error that accounted for the same trailer twice in the court order. *Clark v. Clark*, 423 S.C. 596, 609-10, 815 S.E.2d 772, 779-80 (Ct. App. 2018).  In *Simmons v. Simmons*, 392 S.C. 412, 414-15, 709 S.E.2d 666, 667 (2011), we found the family court had subject matter jurisdiction to revisit a court-approved divorce settlement agreement when the alimony portion was declared void on appeal.  Moreover, the court of appeals has found exceptional circumstances existed to allow modification under Rule 60(b)(5). *See Johnson v. Johnson*, 310 S.C. 44, 47, 425 S.E.2d 46, 48 (Ct. App. 1992) (holding if justice so requires, the court may relieve a party of a final consent order if it was based on a vacated final consent order in a related case).

Here, in its order denying Husband's Rule 60(a) motion, the family court held the relief Husband sought did not fall within the scope of Rule 60(a), and that he instead should have filed a motion pursuant to Rule 59(e).  Under this state's precedent discussed above, this determination was error.  Because we find the family court erred in denying Husband's motion based on a lack of jurisdiction, we now consider the merits of Husband's claim.

In his Rule 60(a) motion, Husband argued the provision was inadvertently added during the process of incorporating the terms of the handwritten agreement into the final order and that the parties did not agree to that term.  In contrast, Wife contended Husband did agree to the provision.  Both in its ruling from the bench and its findings in the written order, the family court indicated Husband agreed to pay one-half of his military retirement benefits to Wife.  However, we are unable to discern from the record any evidence which supports that finding.  It is possible the family court could have found that the provision of the handwritten agreement referencing Husband's payment of one-half of his military retirement benefits to

Wife for the month of December 2016 supported this conclusion.[3]  While the court also could have simply believed Wife's counsel when he said the parties agreed to divide Husband's military retirement, it is well settled that statements by counsel are not evidence. *Ex parte Morris*, 367 S.C. 56, 64, 624 S.E.2d 649, 653 (2006) ("It is well established that counsel's statements regarding the facts of a case and counsel's arguments are not admissible evidence. Consequently, the family court may not base necessary findings of fact and conclusions of law solely on counsel's statements of fact or arguments." (citations omitted)).

Here, there was no hearing with testimony from the parties to determine whether they agreed to the provision at issue, and we cannot infer findings of fact which do not appear in the record. *See* Rule 26(a), SCRFC ("An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision."); *Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991) (noting an order in compliance with Rule 26(a) contains sufficient findings of fact in support of its conclusions); *Id*. ("[W]hen an Order is issued in violation of Rule 26(a), this Court may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence."). Although parties are typically bound by the terms set forth in their agreement, we believe the agreement at issue is ambiguous such that parol evidence of the parties' intent must be considered to determine what the parties agreed to with respect to this fairly substantial marital asset. *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977) ("[I]t is the general rule that parol evidence is admissible to show the true meaning of an ambiguous written contract."). Therefore, we remand for the family court to take testimony and make findings in support of its decision. *See McKinney v. McKinney*, 274 S.C. 95, 104, 261 S.E.2d

---

[3] At oral argument, Husband's counsel explained that this provision was included in the agreement for the purpose of paying Wife arrearages in alimony and child support in exchange for dismissing her contempt action against him.  He stated Husband's military benefits were mentioned in the provision because he wanted to specify where the approximately $691.00 of the $2,923.00 total stated in the agreement would come from.  He further clarified that this was the only amount of Husband's military retirement the parties agreed would be paid to Wife, which is why paragraph 10 of the agreement stated, "Each party will retain their own . . . retirement accounts . . . to the exclusion of the other except as specifically set out in this agreement."

526, 530 (1980) (noting the family court "should have resolved the ambiguity apparent on the face of the agreement by receiving testimony and evidence as to the intentions of the parties and the circumstances of the agreement").

The procedure utilized by the parties and the court in approving the handwritten agreement reached immediately before the hearing has hampered our ability to resolve this case. Normally, we are not inclined to provide litigants with another "bite at the apple" in presenting their case. *See Lewis*, 392 S.C. at 393 n.11, 709 S.E.2d at 656 n.11. Moreover, a party whose conduct induces error is generally not in a position to complain on appeal. 5 C.J.S. *Appeal and Error* § 1082 (2019) ("Error due to the fault, or in favor, of the appellant or plaintiff in error ordinarily will not result in a reversal . . . . Generally, to procure the reversal of a judgment, the commission of error without fault on the part of the party complaining must be shown."). However, without any testimony as to what the parties intended in paragraph 6 of the handwritten agreement, even our de novo standard of review does not enable us to find the parties agreed to share Husband's military retirement benefits. Accordingly, we take this opportunity to remind the bench and the bar of the proper procedure for approving family court agreements.

The approval of agreements reached between parties in domestic litigation dates back to 1983. *Moseley v. Mosier*, 279 S.C. 348, 353, 306 S.E.2d 624, 627 (1983) ("In all decrees entered after this decision, the parties may contract concerning their property settlement and alimony, but the submitted agreement must be approved by the family court."). This court has also mandated statewide mediation of all contested family court cases. *Re: Circuit Court Arbitration and Mediation and Family Court Mediation Pilot Program* 2015-11-12-04 (S.C. Sup. Ct. Order dated Nov. 12, 2015). Under the ADR Rules, a final mediated agreement is reduced to writing in the form of a Memorandum of Agreement prior to approval by the court. Rule 6(g), SCADR. However, even when mediation does not produce a final agreement, counsel often continue to negotiate until a final agreement is reached, sometimes on the eve of trial.

When parties choose to resolve their disputes through settlement rather than participate in a contested hearing, the better practice is for counsel to reduce the agreement to writing in a formal, typed document duly initialed and signed by the parties. Indeed, this Court has noted that "out of court agreements should be reduced to writing and submitted to the court for approval." *Small v. Small*, 286 S.C. 87, 90, 332 S.E.2d 769, 771 (1985). At the approval hearing, the agreement or a copy of it should be marked as an exhibit, and the parties should be examined under oath

concerning their understanding of the agreement, its voluntary nature, their satisfaction with counsel, and whether there has been a full disclosure of all marital assets and debts. Thereafter, counsel should request the court admit the agreement into evidence.

While having a formal, typed document introduced into evidence and ultimately attached to the family court's final order is preferred, we recognize that sometimes, as here, an agreement is reached immediately before a scheduled contested hearing and is not reduced to a formal typed document. *See Small*, 286 S.C. at 88, 332 S.E.2d at 770 (involving a divorce settlement agreed upon in open court). In that case, the terms of the agreement should be carefully stated upon the record, and thereafter, the parties should be thoroughly questioned under oath concerning their understanding of the terms of the agreement, the voluntariness with which the agreement was entered, their satisfaction with counsel, and whether there has been a full financial disclosure. *See Liles v. Liles*, 272 S.C. 511, 513, 252 S.E.2d 886, 887 (1979) (concluding "the settlement agreement became binding when it was read into the record"); Rule 43(k), SCRCP ("No agreement between counsel affecting the proceedings in an action shall be binding unless reduced to the form of a consent order or written stipulation signed by counsel and entered in the record, *or unless made in open court and noted upon the record*, or reduced to writing and signed by the parties and their counsel." (emphasis added)).

Moreover, because family courts are courts of equity, their primary focus is whether the parties' agreement is fair and reasonable. *See Fischl v. Fischl*, 272 S.C. 297, 300, 251 S.E.2d 743, 745 (1979). Naturally, this inquiry begins with determining whether the agreement was voluntarily given. *See Skipper v. Skipper*, 290 S.C. 412, 413, 351 S.E.2d 153, 154 (1986). In deciding whether an agreement is fair, it is not the court's task to decide the parties' rights but rather to determine whether the agreement is within the bounds of reasonableness from both a procedural and substantive perspective. *Burnett v. Burnett*, 290 S.C. 28, 30, 347 S.E.2d 908, 909 (Ct. App. 1986). In the context of property settlement, the court is required to consider the parties' financial declarations.[4] *See* Rule 20(a), SCRFC; *Kane v. Kane*, 280 S.C. 479, 483-84, 313 S.E.2d 327, 330 (Ct. App. 1984). The family court's obligation to review the fairness of an agreement includes a duty to examine plain, unambiguous agreements. *Miller v. Miller*, 280 S.C. 314, 315, 313

---

[4] While the parties' financial declarations were not included in the record on appeal, Wife's counsel indicated at oral argument they were submitted to the family court.

S.E.2d 288, 289 (1984). Ambiguous agreements, however, require the family court to determine the intent of the parties before making a ruling as to fairness and to consider several factors as enumerated in our family court jurisprudence. *See McKinney*, 274 S.C. at 103, 105, 261 S.E.2d at 530-31 (holding the parties' agreement was ambiguous and requiring the family court to try to resolve the ambiguities before ruling upon the fairness of the agreement). *See, e.g.*, *Lucas v. Lucas,* 279 S.C. 121, 122-23, 302 S.E.2d 863, 864 (1983) (considering the parties' contributions to the marriage); *Drawdy v. Drawdy,* 275 S.C. 76, 77, 268 S.E.2d 30, 30 (1980) (finding it incumbent on the family court to consider the economic circumstances and contributions of each party); *Doe v. Doe*, 286 S.C. 507, 514, 334 S.E.2d 829, 833 (Ct. App. 1985) (noting the trial judge considered the length of the marriage, the parties' ages, incomes, needs and obligations, financial status, and relative contributions to the marriage).

Because the parties' agreement in this case was ambiguous, the family court was required to determine the parties' intent and resolve the ambiguities as part of its obligation to review whether the agreement was fair and reasonable. Based on the record presented to us, neither at the initial hearing approving the parties' agreement nor the subsequent hearing on Husband's Rule 60(a) motion was any evidence received by the family court as to what the parties intended by paragraph 6 in the handwritten agreement regarding Husband's military retirement benefits. Therefore, we cannot discern from the record before us any evidence supporting the family court's finding that the final order incorporated the parties' intent with respect to this significant marital asset. Accordingly, we remand to the family court to make this determination.

## CONCLUSION

For the foregoing reasons, we conclude the court of appeals erred in affirming the family court's denial of Husband's Rule 60(a) motion based on a lack of jurisdiction, and we remand for an evidentiary hearing to determine what the parties actually agreed to with respect to Husband's military retirement benefits and whether Husband is entitled to relief.

**REVERSED AND REMANDED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**